# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **JOHN B. GRAHAM,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-15-589-CG |
| | ) |
| **CAROLYN W. COLVIN, Acting** | ) |
| **Commissioner of Social Security** | ) |
| **Administration,** | ) |
| | ) |
| Defendant. | ) |

## **OPINION AND ORDER**

Plaintiff John B. Graham brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying Plaintiff's applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") under the Social Security Act, 42 U.S.C. §§ 401-434, 1381-1383f. Upon review of the administrative record (Doc. No. 11, hereinafter "R. _") and the arguments and briefs of the parties, the Court reverses the Commissioner's decision and remands the case for further proceedings.

PROCEDURAL HISTORY AND ADMINISTRATIVE DECISION

Plaintiff protectively filed his applications for DIB and SSI in April 2011, alleging disability beginning on April 30, 2009. R. 164-72, 215. Following initial denial of Plaintiff's applications, a hearing was held before an ALJ on July 30, 2013. R. 42-95, 100-05. In addition to Plaintiff, a medical expert and a vocational expert ("VE") testified

at the hearing. R. 42-80. The ALJ issued an unfavorable decision on November 12, 2013. R. 20-41.

The Commissioner uses a five-step sequential evaluation process to determine entitlement to disability benefits. *See Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009); 20 C.F.R. §§ 404.1520, 416.920. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since April 30, 2009. R. 25. At step two, the ALJ determined that Plaintiff had the severe impairments of status post fracture and obesity. R. 25-31. At step three, the ALJ determined that Plaintiff's condition did not meet or equal any of the presumptively disabling impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 31.

The ALJ next assessed Plaintiff's residual functional capacity ("RFC") based on all of his impairments. R. 31-35. The ALJ found that Plaintiff had the RFC to perform light work subject to certain limitations:

> [Plaintiff] could occasionally lift/carry/push/pull 20 pounds and frequently lift/carry/push/pull 10 pounds. He could sit for 6 hours out of an 8-hour workday and stand/walk 2 hours out of an 8-hour workday. He should not climb ladders/ropes/scaffolds. He could occasionally climb stairs, balance, stoop, kneel, and crouch, but should never crawl. He should avoid exposure to unprotected heights or dangerous machinery.

R. 31. The ALJ determined at step four that Plaintiff was unable to perform any past relevant work. R. 35.

At step five, the ALJ considered whether there are jobs existing in significant numbers in the national economy that Plaintiff—in view of his age, education, work experience, and RFC—could perform. R. 35-36. Relying upon the VE's testimony, the

ALJ concluded that Plaintiff could perform unskilled, sedentary occupations such as table worker, polisher, and touch-up screener, and that such occupations offer jobs that exist in significant numbers in the national economy. R. 36. Therefore, the ALJ concluded that Plaintiff had not been disabled within the meaning of the Social Security Act during the relevant time period. R. 36.

Plaintiff's request for review by the Appeals Council was denied. R. 1-5. The unfavorable determination of the ALJ stands as the Commissioner's final decision. *See* 20 C.F.R. §§ 404.981, 416.1481.

## STANDARD OF REVIEW

Judicial review of the Commissioner's final decision is limited to determining whether factual findings are supported by substantial evidence in the record as a whole and whether correct legal standards were applied. *Poppa v. Astrue*, 569 F.3d 1167, 1169 (10th Cir. 2009). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003) (internal quotation marks omitted). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004) (internal quotation marks omitted). The court "meticulously examine[s] the record as a whole," including any evidence "that may undercut or detract from the ALJ's findings," "to determine if the substantiality test has been met." *Wall*, 561 F.3d at 1052 (internal quotation marks omitted). While a reviewing court considers whether the Commissioner followed applicable rules of law in weighing particular types of evidence

in disability cases, the court does not reweigh the evidence or substitute its own judgment for that of the Commissioner. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008).

ANALYSIS

On appeal, Plaintiff raises several objections to the denial of benefits, including a challenge to the ALJ's step-two determination that Plaintiff's only medically determinable impairments were physical rather than mental in nature and, relatedly, a challenge to the ALJ's omission of mental limitations from the RFC determination. *See* Pl.'s Br. (Doc. No. 15) at 9-17.[1]

*A. The Relevant Evidence*

During the relevant disability period, Plaintiff was diagnosed with depression and anxiety. From April 2012 to August 2012, Plaintiff was specifically diagnosed with and prescribed/refilled medication for depression by Foad Farahmand, MD, and attending physicians at OU Physicians Family Medicine. R. 570-73, 574-77, 578-81 (Ex. 15F). Glenn Stow, MD, also treated and prescribed medication to Plaintiff for depression continually from September 2012 through May 2013. R. 630-31, 632-33, 634-35, 637-38, 640-41, 643-44 (Ex. 19F).

The record also contains letters and a medical source statement from Tommie Smith, a Licensed Professional Counselor, who was working in conjunction with Dr. Stow. *See* R. 56, 568 (Ex. 14F), 603-06 (Ex. 16F), 623-27 (Ex. 18F). LPC Smith stated in her letters that Plaintiff had been referred to her for weekly psychotherapy treatment by

---

[1] With the exception of the administrative record, references to documents electronically filed by the parties use the page numbers assigned by the Court's ECF system.

his primary physician and that she had met with Plaintiff each week from August to November 2012. R. 568, 624, 625. LPC Smith stated that Plaintiff "is suffering from depression due to not being able to provide for his family" and "is dealing with emotional guilt, anxiety and depression on a daily basis." R. 568, 624, 625. At the July 2013 administrative hearing, Plaintiff's counsel explained that he had asked LPC Smith for her treatment notes, but "apparently she does need to keep them, or they're suppressed," and so LPC Smith had issued these letters instead. R. 56.

LPC Smith stated in the November 2012 medical source statement ("MSS") that Plaintiff suffers from:

1. MARKED limitations in his abilities:

   - to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances;
   - to complete a normal work day and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods;
   - to interact appropriately with the general public; and
   - to respond appropriately to changes in the work setting.

2. MODERATE limitations in his abilities:

   - to understand and remember detailed instructions;
   - to carry out detailed instructions;
   - to maintain attention and concentration for extended periods;
   - to work in coordination with or proximity to others without being distracted by them;
   - to make simple work-related decisions;
   - to accept instructions and respond appropriately to criticism from supervisors;

- to get along with coworkers or peers without distracting them or exhibiting behavioral extremes;
- to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness;
- to be aware of normal hazards and take appropriate precautions;
- to travel in unfamiliar places or use public transportation; and
- to set realistic goals or make plans independently of others.

R. 626-27. LPC Smith stated that Plaintiff "is on psychotropic medications for his depression [and] anxiety, which [a]ffect cognitive function and cause irritability." R. 627.

At the hearing, Plaintiff testified that he had sought mental health treatment from multiple physicians and had been prescribed various depression medicines. R. 66-70, 78. The ALJ ordered a mental consultative examination and a physical consultative examination. R. 56-59; *see also* R. 54-55; 20 C.F.R. §§ 404.1512(e), .1519a, 416.912(e), .919a.

On August 15, 2013, Stephanie Crall, PhD, examined Plaintiff and issued an MSS. R. 665; *see* R. 662-68 (Ex. 21F). Dr. Crall noted that Plaintiff reported suffering from chronic depression, with uncontrollable worrying and having gained more than 200 pounds, since a trucking accident in 2009. R. 665. Dr. Crall observed that Plaintiff "was tearful during the examination and appeared depressed" and that his "[s]ocial isolation was apparent." R. 665-66. Dr. Crall diagnosed Plaintiff with both moderate Major Depressive Disorder and Generalized Anxiety Disorder but—stating that Plaintiff's "functional limitations were more likely due to physical rather than to mental impairments"—opined that Plaintiff's mental impairments did not affect Plaintiff's

abilities with respect to instructions, interactions with others, and adjustments to changes in a work setting. *See* R. 662-63, 667. *But see* R. 667 (Dr. Crall opining that Plaintiff's "ability to engage in work-related mental activities . . . was likely adequate for simple and some complex tasks"). Dr. Crall stated that Plaintiff's condition was not expected to improve or change significantly in the next twelve months. R. 667, 668.

### B. *The ALJ's Evaluation of Plaintiff's Mental Impairments*

At step two, the ALJ determined that Plaintiff had two severe physical medically determinable impairments ("MDIs") but made no finding of a mental MDI, either severe or nonsevere. *See* R. 25-31. The ALJ did not engage in the "special technique," as is required by regulation when a claimant offers evidence of a mental disorder, that is used to determine the presence and severity of a mental MDI. R. 25-31; *Grotendurst v. Astrue*, 370 F. App'x 879, 882 (10th Cir. 2010); 20 C.F.R. §§ 404.1520a, 416.920a; *see also* Revised Medical Criteria for Evaluating Mental Disorders, 81 Fed. Reg. 66138-01 (Sept. 26, 2016).

In her RFC analysis at step four, the ALJ clarified that she had found that Plaintiff "has no established mental impairment." R. 33. The ALJ stated that Plaintiff had "only minimal medical treatment from Dr. Stow from September 2012 through May 2013" and, as relevant to psychiatric treatment, Plaintiff had "not always been compliant with treatment, recommendations, or medications." R. 33.

The ALJ evaluated the reports of consultative examiner Dr. Crall as follows:

> Dr. Crall's psychological consultative examination showed that the claimant had major depression, moderate, and anxiety disorder, but [her MSS] indicated [the claimant's] mental impairments did not affect his

> ability to understand, remember, and carry out instructions. His ability to interact appropriately with supervisors, coworkers, and the public, as well as responding to changes in a routine work setting were not affected by his impairment. Dr. Crall opined that although [the claimant] experienced depression and anxiety, functional limitations were more likely due to physical rather than to mental impairment (Exhibit 21F). Dr. Crall's diagnosis was of limited probative value, as it was not consistent with the other medical documentation in the file and was not consistent with [her] own [MSS].

R. 34; *see also* R. 30, 662-68. Further, the ALJ evaluated the MSS completed by LPC Smith as follows:

> [The MSS of] Tommie Smith, LPC . . . is also given limited weight as she is not a physician or psychologist, and is not an acceptable treating source. This [MSS] is not consistent with other medical documentation in the file and is not substantiated by treating counseling notes to warrant such marked limitations. Treating source opinions on the nature and severity of an individual's impairments are entitled to controlling weight only if the opinion is not inconsistent with other substantial evidence in the case (SSR 96-2p). Moreover, pursuant to Social Security Ruling 96-5p, this issue of the individual's residual functional capacity, is an administrative issue reserved to the Commissioner and [is] never entitled to controlling weight or special significance.

R. 34; *see also* R. 29, 626-27. The ALJ included no mental limitations in her RFC for Plaintiff. R. 31.

### C. Discussion

#### 1. The ALJ's Failure to Find Mental MDIs

At step two of the ALJ's sequential evaluation, the claimant must establish that he or she has at least one physical or mental MDI that is "severe" or a combination of such impairments that is "severe." 20 C.F.R. § 404.1520(a)(4)(ii), (c); *id.* § 416.920(a)(4)(ii), (c); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). An MDI—which can be severe or nonsevere—"result[s] from anatomical, physiological, or psychological

8

abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. §§ 404.1508 (citation omitted), 416.908 (same). To establish the existence of an MDI, a claimant must present "medical evidence [of the abnormalities] consisting of signs, symptoms, and laboratory findings" and not just the claimant's own "statement of symptoms." 20 C.F.R. §§ 404.1508, 416.908; *accord id.* §§ 404.1529(b) ("Your symptoms . . . will not be found to affect your ability to do basic work activities unless medical signs or laboratory findings show that a medically determinable impairment(s) is present."), 416.929(b) (same).

As detailed, Plaintiff was diagnosed with depression and anxiety on multiple occasions by multiple medical professionals, including treating physicians at OU Physicians Family Medicine working with Dr. Farahmand, treating physician Dr. Stow, and examining psychologist Dr. Crall. *See, e.g.*, R. 570-73, 574-77, 578-81, 630-31, 632-33, 634-35, 637-38, 640-41, 643-44, 667. Nowhere in step two (or elsewhere) does the ALJ offer any explanation for rejecting the treating physicians' medical determinations that Plaintiff suffered from major depressive disorder requiring treatment with various psychotropic medications and weekly psychotherapy sessions. *See Watkins v. Barnhart*, 350 F.3d 1297, 1301 (10th Cir. 2003) (holding that if an ALJ rejects a treating source opinion, he or she "must then give specific, legitimate reasons for doing so" (internal quotation marks omitted)); *McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002) ("In choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion

outright only on the basis of contradictory medical evidence and *not due to his own credibility judgments, speculation or lay opinion*." (internal quotation marks omitted)).[2]

In her RFC assessment, the ALJ states that she found Dr. Crall's diagnosis of depression and anxiety to be of "limited probative value" because "it was not consistent with the other medical documentation in the file and was not consistent with [her] own [MSS]." R. 34. That conclusion is not adequately explained or supported by substantial evidence, and in any event would not negate the failure to discuss the treating physicians' diagnoses. *See Chapo v. Astrue*, 682 F.3d 1285, 1291 (10th Cir. 2012) (noting that an examining medical-source opinion is "given particular consideration" and is "presumptively entitled to more weight than a doctor's opinion derived from a review of the medical record"); *cf. Hamlin v. Barnhart*, 365 F.3d 1208, 1217 (10th Cir. 2004) (finding error where the ALJ failed to "specifically highlight those portions of the record with which [a treating-source medical] opinion was allegedly inconsistent"); *Watkins*, 350 F.3d at 1301.

The uncontradicted evidence of diagnoses and treatment for depression and anxiety satisfies Plaintiff's burden to show that those conditions were MDIs. Therefore, the ALJ erred at step two in finding that Plaintiff had no mental MDI.

---

[2] In her step-two summary of the medical evidence, the ALJ notes that in April 2012 Plaintiff was diagnosed with depression and prescribed the antidepressant Paxil by Brian Coleman, MD, an attending physician working with Dr. Farahmand. R. 29; *see* R. 578-82. The ALJ omits from her summary that in May and August of 2012 the same diagnosis was noted and Plaintiff was continued on Paxil and insomnia medication. R. 29; *see* R. 570-73, 574-77.

2. Harmless Error

The resulting question is whether other findings by the ALJ render this error harmless, as the Commissioner asserts. *See* Def.'s Br. (Doc. No. 21) at 13-14. The Tenth Circuit has stated that "a failure to find an impairment medically determinable is essentially a step-four error," which can "be obviated if the ALJ considered the non-medically determinable impairment in assessing the RFC." *Ray v. Colvin*, No. 15-2149, 2016 WL 3974052, at *1 (10th Cir. July 20, 2016) (citing *Wells v. Colvin*, 727 F.3d 1061, 1069 (10th Cir. 2013)). Therefore, the ALJ's RFC discussion, "though far from comprehensive, might have satisfied the ALJ's obligation at step four to provide a more detailed assessment of [Plaintiff's] ability to complete various job functions as part of determining [his] RFC." *Wells*, 727 F.3d at 1069.

That was not the case here. It appears that the ALJ decided that Plaintiff has no functional limitations caused by mental disorders and therefore reasoned backward that he must not have any mental disorders. However, beyond the omission of mental limitations in the RFC, the ALJ never actually states a finding in this regard, and what is stated in the RFC assessment demonstrates that her "conclusions on this point" were not produced through application of correct legal standards and/or were not supported by substantial evidence. *Id*.

    a. Evidence Rejected by the ALJ

First, the ALJ does not adequately discuss the probative evidence that she rejected or her reasons for doing so. Regarding treating physician Dr. Stow and the treating physicians at OU Physicians Family Medicine working with Dr. Farahmand, those

medical professionals' findings do not offer much in the way of evidence of functional limitations—but they offer *some* evidence, and the ALJ does not address why that evidence was rejected. *See* R. 31-35; *see, e.g.*, R. 637 (Dr. Stow noting that Plaintiff's "signs and symptoms" "[a]ssociated with" his depression included "anhedonia, anxiety, depressed mood, difficulty concentrating and sleep disturbance"), 643 (Dr. Stow noting Plaintiff's "guilt, helplessness, hopelessness and sleep disturbance"), 576 (attending doctor at OU Physicians noting Plaintiff's "tearful" and "depressed affect").

Regarding the MSS completed by LPC Smith, the ALJ correctly notes that Ms. Smith is not an "acceptable" medical source and her opinions are not entitled to "treating source" deference. *See* R. 34; 20 C.F.R. §§ 404.1502., 1513(a), 416.902, .913(a). If the ALJ's principal determination was that Plaintiff had no mental limitations, however, a MSS describing Plaintiff's multiple mental limitations is significantly probative evidence even if issued by a mental health or family counselor. *See Frantz v. Astrue*, 509 F.3d 1299, 1301-02 (10th Cir. 2007) (citing SSR 06-3p, 2006 WL 2329939, at *5-6 (Aug. 9, 2006) (clarifying that opinions from nonmedical sources, such as professional counselors, should be weighed using applicable factors set out in 20 C.F.R. §§ 404.1527(c) and 416.927(c))). Here, the ALJ primarily rejects this evidence as being "[in]consistent with other medical documentation in the file" but gives no citation to any inconsistent document. *See* R. 34. Nor is such an inconsistency discernible from the ALJ's summary of the evidence or other discussion. An ALJ "generally should explain the weight given to opinions from" sources such as a licensed counselor, "or otherwise ensure that the discussion of the evidence . . . allows a . . . subsequent reviewer to follow the

adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." SSR 06-3p, 2006 WL 2329939, at *6; *cf. Hamlin*, 365 F.3d at 1219-20 (finding that ALJ erred by not "sufficiently highlight[ing] how" treating physicians' opinions "were inconsistent with the other medical evidence in the record"). *See generally* SSR 06-3p, 2006 WL 2329939, at *2, *5 (stating that evidence from "other sources" such as counselors "may be based on special knowledge of the individual and may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function" and "may outweigh the opinion of an 'acceptable medical source'").

Regarding Plaintiff's activities of daily living—a functional area considered in assessing the severity of mental MDIs under the special technique (20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3)) but considered by the ALJ here for credibility purposes—the ALJ describes those activities by reference to a form Function Report completed by Plaintiff, but "[t]he statements reported on the form were much more nuanced than the ALJ's summary suggests." *Wells*, 727 F.3d at 1070. The ALJ states that among other activities Plaintiff "is able to take care of his own personal needs, as well as the needs of his ten-year-old daughter," and "prepares meals, performs routine household chores, [and] shops." R. 34; *see* R. 226-33. However, Plaintiff stated in the Function Report that his condition affects his sleep, he doesn't "go anywhere" and "just stay[s] home," he does not prepare meals very often, he does not do house chores or yard work, and he does not handle stress or changes in routine well. R. 227, 228-29, 231, 232; *see also* R. 78 (Plaintiff testifying that he sleeps 12 to 14 hours a day due to depression), 666 (Plaintiff reporting to Dr. Crall that he requires assistance getting dressed and

13

performs simple housekeeping tasks only with difficulty). An ALJ may not take a claimant's testimony "out of context" or "selectively acknowledg[e] parts of [his] statements while leaving important segments out." *Sisco v. U.S. Dep't of Health & Human Servs.*, 10 F.3d 739, 743 (10th Cir. 1993); *accord Sitsler v. Astrue*, 410 F. App'x 112, 117-18 (10th Cir. 2011).[3] Therefore, "[t]o the extent the ALJ intended" her statements about Plaintiff's activities of daily living "to constitute a step-four mental RFC analysis, the conclusions [she] reached from these statements are not supported by substantial evidence." *Wells*, 727 F.3d at 1071 (finding remand required where ALJ relied on a step-two nonseverity finding to conclude that claimant had no limitation based on mental impairments and ALJ's conclusions regarding claimant's mental impairments when assessing credibility as part of RFC determination were not supported by substantial evidence).

> Regarding Plaintiff's treatment for mental impairments, the ALJ stated:
>
> The claimant testified that he stopped seeing a psychiatrist because he could not afford to drive to Oklahoma City. He was put on medication that Sooner Care would not pay for so after his samples ran out, he quit taking medications. He was only on psychotropic medications for six week[s], and he was not sure if medications worked or not. The [ALJ] finds that the claimant has not always been compliant with treatment, recommendations, or medications.

R. 33. There are several problems with this analysis. The statement that Plaintiff "was only on psychotropic medications for six weeks" omits that in 2012 and 2013 Plaintiff received mental health treatment and was prescribed psychotropic medications from other

---

[3] As compared to the credibility analysis, the ALJ in her general summary of the medical evidence more accurately and less selectively described Plaintiff's statements from the Function Report and Dr. Crall's examination. *Compare* R. 30, *and* R. 32, *with* R. 34.

physicians, including Dr. Farahmand and Dr. Stow. *Compare* R. 33, *with* R. 69, 575-77, 581, 628, 630, 633, 635, 638, 641, 644. Further, "the lack of treatment for an impairment does not necessarily mean that the impairment does not exist or impose functional limitations." *Grotendorst*, 370 F. App'x at 883. This proposition is especially relevant when the lack of treatment is caused by financial hardship. *See* SSR 96-7p, 1996 WL 374186, at *7 (July 2, 1996) ("[T]he [ALJ] must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations the individual may provide, or other information in the case record, that may explain . . . failure to seek medical treatment."), *superseded by* SSR 16-3p, 2016 WL 1119029 (Mar. 28, 2016); *see also id.* at *8 (stating that explanations provided by the claimant, including that he or is "unable to afford treatment" and does not "have access to free or low-cost medical services," "may provide insight into the individual's credibility"). Here, Plaintiff testified that (i) he had been receiving psychiatric treatment but stopped because he could not afford to drive from his home in a rural area to the location of the psychiatrist, and (ii) his insurance would not pay for the medication prescribed by the psychiatrist. *See* R. 33, 67-70. Neither the ALJ's questioning of Plaintiff at the hearing nor the discussion in the written decision demonstrates that the ALJ adequately considered and disbelieved Plaintiff's statements regarding his financial circumstances, as would be required for the ALJ to properly rely upon a failure to seek treatment as a basis to find Plaintiff's statements less credible. *See* R. 33, 50-52, 56-60, 66-71; SSR 96-7p, 1996 WL 374186, at *7-8.

### b. Rationale and Evidence for the ALJ's Decision

Second, the ALJ does not adequately discuss the reasons for and evidence in support of her RFC determination. As noted, the ALJ appears to conclude that Plaintiff's mental impairments cause no functional limitations but fails to provide the reasons behind this conclusion. Setting aside the fact that the ALJ found that there were no mental impairments, the likely evidence to support a conclusion that they cause no limitations would be the portion of Dr. Crall's MSS in which that psychologist found that certain of Plaintiff's functional abilities—including his abilities with respect to instructions, interactions, and changes in a work setting—are unaffected by his mental impairments. R. 662-63. The ALJ states that she gave "little value" to Dr. Crall's "diagnosis." R. 34. Perhaps the ALJ meant to accept the Dr. Crall's opinion only as to a lack of limitations, but she did not state as much or assign any discrete weight to that portion of the opinion; nor did she address Dr. Crall's accompanying, inconsistent opinion that Plaintiff's mental ability to perform work-related activities was "likely adequate for simple and some complex tasks." R. 34; *see* R. 667; SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996) ("If the RFC assessment conflicts with an opinion from a medical source, the [ALJ] must explain why the opinion was not adopted.").

The Court cannot meaningfully review an ALJ's decision if it must "draw factual conclusions on behalf of the ALJ," or if it is "left to speculate what evidence led the ALJ" to a particular finding or conclusion. *Drapeau v. Massanari*, 255 F.3d 1211, 1214 (10th Cir. 2001) (internal quotation marks omitted). When there is no discernible and valid explanation for an RFC determination in the written decision, a reviewing court "may not

create or adopt post-hoc rationalizations to support the ALJ's decision that are not apparent from the ALJ's decision itself." *Haga v. Astrue*, 482 F.3d 1205, 1207-08 (10th Cir. 2007); *cf. Fleetwood v. Barnhart*, 211 F. App'x 736, 739 (10th Cir. 2007) (noting the Tenth Circuit's requirement "that the ALJ provide reasoning for his decision [that the claimant does not have a severe mental impairment] so that judicial review is both possible and meaningful"). The ALJ's inadequate analysis of any limitations caused by Plaintiff's mental impairments fails to adhere to these standards and prevents meaningful review by the Court.

    c. <u>The ALJ's Discussion Does Not Demonstrate That She Complied with the Special Technique</u>

Finally, relating to both types of shortcomings in the written decision discussed above, the ALJ's findings with respect to Plaintiff's mental impairments and limitations are not sufficient to demonstrate that the ALJ complied with the "special technique" used to evaluate the severity of mental MDIs. *See* 20 C.F.R. §§ 404.1520a, 416.920a; *see also* Revised Medical Criteria for Evaluating Mental Disorders, 81 Fed. Reg. 66138-01 (Sept. 26, 2016). Under this special technique,

> once medically determinable mental impairments are found, the ALJ must "rate the degree of functional limitation resulting from the impairment(s)." The ALJ does this by rating the claimant's limitations in "four broad functional areas," which are: "Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation." [20 C.F.R.] § 404.1520a(c)(3). These ratings are then used to determine the severity of the mental impairment(s). Under the regulations,

> the [ALJ's] written decision must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in

> reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the [four broad] functional areas . . . .

*Grotendorst*, 370 F. App'x at 882 (quoting 20 C.F.R. § 404.1520a(b)(2), (e)(4)). Here, the ALJ's RFC discussion is not sufficient to provide the missing consideration of "the pertinent findings and conclusions" that would have been required under the regulations if the ALJ had properly found Plaintiff's depression and anxiety to be MDIs at step two. *See id.* at 882-84, 882 n.1 (remanding where ALJ, "despite record evidence of limitations due to mental impairments," failed to properly apply the special technique and "failed to either include those limitations in her RFC determination and her hypothetical questions, or explain that failure"); 20 C.F.R. §§ 404.1520a(b)-(e), 416.920a(b)-(e); *Wells*, 727 F.3d at 1069; SSR 96-8p, 1996 WL 374184, at *4 (providing that "[t]he mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment" than the special technique described in § 404.1520a).

    d. <u>Conclusion as to Harmless Error</u>

For all of these reasons, the Court cannot say that no reasonable factfinder would have resolved the matter differently or that the ALJ's errors "would not have affected the outcome in this case." *See Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1163, 1173 (10th Cir. 2012).[4] The ALJ's "failure to apply the correct legal standard or to provide this court

---

[4] The Commissioner argues that the ALJ's failure to include any mental functional limitations in the RFC was, at most, harmless error because the three jobs identified for Plaintiff by the ALJ at step five all are unskilled in nature. *See* Def.'s Br. at 14; R. 36. While "a limitation to unskilled work sometimes may account for a claimant's mental limitations, it typically does not." *Ringgold v. Colvin*, 644 F. App'x 841, 846 (10th Cir.

18

with a sufficient basis to determine that appropriate legal principles have been followed" is grounds for reversal of the decision. *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988) (internal quotation marks omitted). Because remand is required for proper consideration of Plaintiff's mental impairments, the Court does not reach Plaintiff's additional propositions of error, which "may be affected by the ALJ's treatment of this case on remand." *See* Pl.'s Br. at 7-30; *Watkins*, 350 F.3d at 1299.[5]

## CONCLUSION

The decision of the Commissioner is reversed and the case remanded for further proceedings pursuant to the fourth sentence of 42 U.S.C. § 405(g). A separate judgment shall be entered.

ENTERED this 30th day of September, 2016.

_____
CHARLES B. GOODWIN
UNITED STATES MAGISTRATE JUDGE

---

2016) (citing *Chapo*, 682 F.3d at 1290 n.3 ("While the jobs cited by the VE happen to be unskilled, that just accounted for issues of skill transfer, not impairment of mental functions—which are not skills but, rather, general prerequisites for most work at any skill level." (internal quotation marks omitted))).

[5] The Court notes that the ALJ's assessment of Plaintiff's credibility also was based in part upon the failure of Plaintiff—who is morbidly obese at 515 pounds—to lose weight and to exercise "as recommended." R. 32, 33. The relevant regulation instructs that because "[o]besity is a life-long disease," treatment such as medication or surgery "is often ineffective," and the ALJ "will not find failure to follow prescribed treatment unless there is clear evidence that treatment would be successful." SSR 02-1p, 2002 WL 34686281, at *9 (Sept. 12, 2002). Of significance here, "[a] treating source's statement that an individual 'should' lose weight or has 'been advised' to get more exercise *is not prescribed treatment*." *Id.* (emphasis added).